965 F.2d 1103
 296 U.S.App.D.C. 141
 BEACH COMMUNICATIONS, INC., Maxtel Limited Partnership,
Pacific Cablevision and Western Cable
Communications, Inc., Petitioners,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents,
Spectradyne, Inc., National Cable Television Association,
Inc., Wireless Cable Association, Inc.,
Southwestern Bell Corporation and Hughes
Communications Galaxy, Inc.,
Intervenors.
 No. 91-1089.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Dec. 9, 1991.
Prior Decision March 6, 1992.
Decided June 9, 1992.
 
 Roberta L. Cook, Atty., F.C.C., with whom Robert L. Pettit, General Counsel, and John E. Ingle, Deputy Associate General Counsel, F.C.C., and James F. Rill, Asst. Atty. Gen., and Robert B. Nicholson and James W. Lowe, Attys., U.S. Dept. of Justice, Washington, D.C., were on the brief, for respondents. Daniel M. Armstrong, Associate General Counsel, Washington, D.C., also entered an appearance for respondents.
 
 
 1
 Brenda L. Fox and Diane B. Burstein, Washington, D.C., were on the brief for intervenor National Cable Television Ass'n, Inc. Seth A. Davidson, Washington, D.C., also entered an appearance for intervenor.
 
 
 2
 Ronald A. Siegel and Mark L. Pelesh, Washington, D.C., entered appearances for intervenor Spectradyne, Inc.
 
 
 3
 Paul J. Sinderbrand and Robert F. Aldrich, Washington, D.C., entered appearances for intervenor Wireless Cable Ass'n, Inc.
 
 
 4
 Martin E. Grambow, Washington, D.C., James D. Ellis and Liam S. Coonan, St. Louis, Mo., entered appearances for intervenor Southwestern Bell Corp.
 
 
 5
 Gary M. Epstein, Washington, D.C., entered an appearance for intervenor Hughes Communications Galaxy, Inc.
 
 
 6
 Before: MIKVA, Chief Judge, HARRY T. EDWARDS and D.H. GINSBURG, Circuit Judges.
 
 
 7
 Opinion for the Court filed PER CURIAM.
 
 
 8
 Dissenting opinion filed by Chief Judge MIKVA.
 
 PER CURIAM:
 
 9
 This is our second decision on the instant petition for review of an FCC rule, the Cable Definition Rule, promulgated pursuant to the Cable Act. In the first decision, Beach Communications, Inc. v. FCC, 959 F.2d 975 (D.C.Cir.1992) ("Beach I "), we remanded the record to the FCC. The record has now been returned. We hold that the Cable Act violates the equal protection component of the Fifth Amendment, insofar as it imposes a discriminatory franchising requirement, and vacate the Cable Definition Rule in relevant part.
 
 
 10
 The background of this case is explained in detail in Beach I, so we will not repeat it here. To briefly summarize, petitioners operate or plan to operate external, quasi-private SMATV facilities: where wires or other closed transmission paths interconnect separately-owned, controlled and managed multiple-unit dwellings, without those wires using public rights-of-way. The Cable Definition Rule construes the statutory term "cable system" to include such facilities, but to exclude both internal facilities (where wires do not interconnect separate buildings or use public rights-of-way) and wholly private facilities (where a single building or a group of commonly-owned, controlled or managed buildings are served, and the wires do not use public rights-of-way). Section 621(b)(1) of the Cable Act requires the operator of a "cable system" to obtain a local franchise.[1] Petitioners challenge this requirement on equal protection grounds.
 
 
 11
 Beach I held that the Cable Act clearly defined an external, quasi-private SMATV facility as a "cable system." We also ruled that the minimum-scrutiny equal protection issue was ripe, and remanded the record for the FCC to consider whether some "rational basis" justified the distinction between this kind of facility and the facilities exempted by the Cable Definition Rule. The equal protection issue could not be avoided, we explained, because the Cable Act clearly excluded wholly private facilities from the definition of a "cable system." We left open the question whether that statutory term might be construed to include internal facilities that were not wholly private.
 
 
 12
 The FCC has now returned the record, and has failed to provide any justification [296 U.S.App.D.C. 143] for the challenged distinction. We therefore decide that the Cable Act is unconstitutional in part. Specifically, we decide that the statute violates the equal protection component of the Fifth Amendment insofar as it requires local franchises for external, quasi-private SMATV facilities and exempts wholly private facilities from this requirement. Thus, we need not consider whether differential regulation of external, quasi-private SMATV facilities and internal facilities is also unconstitutional. This latter issue would entail a further, and now unnecessary, exercise in statutory construction.
 
 
 13
 We can conceive[2] of no reason why an external, quasi-private SMATV facility, but not a wholly private facility, should be subject to local cable franchising. Neither uses a public right-of-way.[3] Our colleague has suggested that an external, quasi-private facility is more "similar to a traditional cable system." Beach I, 959 F.2d at 990 (Mikva, C.J., concurring in part and concurring in the judgment). We have no basis for assuming this. Furthermore, the mere impression of "similarity," without more, does not amount to a "rational basis." It does not amount to a reasoned justification in terms of some public purpose. To be sure, our colleague also offers putative justifications. See id. But the FCC has wholly failed to flesh these out, or to suggest some alternative rationale: "[T]he Commission ... reports to the Court that it is unable to provide additional 'legislative facts,' beyond those provided by Judge Mikva in his concurring opinion." Report of Respondent Federal Communications Commission in Response to Opinion of March 6, 1992, at 1-2. We are now convinced that the impression of "similarity" is just that: a naked intuition, unsupported by conceivable facts or policies. Cf. Zobel v. Williams, 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982) (invalidating as irrational an Alaska dividend program that distributed benefits proportionately to an adult state citizen's duration of residency).
 
 
 14
 There remains the question of remedy.
 
 
 15
 Where a statute is defective because of underinclusion, ... there exist two remedial alternatives: a court may either declare the statute a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by the exclusion.
 
 
 16
 Califano v. Westcott, 443 U.S. 76, 89, 99 S.Ct. 2655, 2663, 61 L.Ed.2d 382 (1979) (internal quotations and brackets omitted).[4] The Court has further explained that, "[a]lthough the choice between extension and nullification is within the constitutional competence of a federal district court, ... the court should not, of course, use its remedial powers to circumvent the intent of the legislature." Heckler v. Mathews, 465 U.S. 728, 739 n. 5, 104 S.Ct. 1387, 1395 n. 5, 79 L.Ed.2d 646 (1984) (internal quotations omitted). But the Cable Act places a burden on petitioners rather than denying them benefits, and is overinclusive rather than underinclusive in that this burden does not serve the Act's purposes. Assuming, arguendo, that "extension" (extending the franchise requirement to include wholly [296 U.S.App.D.C. 144] private facilities) rather than "nullification" (exempting external, quasi-private SMATV facilities from that requirement) remains within our "constitutional competence," we would have no basis for choosing "extension." Such a remedy would surely circumvent Congress's intent, because neither kind of facility uses a public right-of-way.
 
 
 17
 Rather, we void the franchise requirement, insofar as it covers petitioners and similarly situated SMATV operators. The severability provision at 47 U.S.C. § 608 (1988), which governs the Cable Act, authorizes this narrowly focussed remedy: "If any provision of this chapter or the application thereof to any person or circumstance is held invalid, the remainder of the chapter and the application of such provision to other persons or circumstances shall not be affected thereby." Specifically, we declare that the operators of external, quasi-private SMATV facilities are not required to obtain franchises pursuant to § 621(b)(1) of the Cable Act,[5] as the Act currently stands, and we direct the FCC to amend the Cable Definition Rule accordingly.
 
 
 18
 If we have misunderstood congressional intent in our construction of the Act and its underlying purposes, we have no doubt that Congress will act to remedy the situation.[6]
 
 MIKVA, Chief Judge, dissenting:
 
 19
 For the reasons expressed in my concurring opinion in Beach Communications, Inc. v. FCC, 959 F.2d 975 (D.C.Cir.1992), I dissent.
 
 
 
 [1]
 More precisely, § 621(b)(1) states: "Except to the extent provided [by a grandfather clause], a cable operator may not provide cable service without a franchise." 47 U.S.C. § 541(b)(1) (1988). The terms "cable operator," "cable service" and "franchise" are defined in § 602 of the Cable Act
 
 
 [2]
 When applying the rational basis test, the Supreme Court has often stated that a classification may be sustained if any conceivable justification would support it. See, e.g., Bowen v. Gilliard, 483 U.S. 587, 601, 107 S.Ct. 3008, 3017, 97 L.Ed.2d 485 (1987)
 
 
 [3]
 As we have already explained at length, "[t]he fact that cable television uses public rights-of-way has been the predominant rationale for local franchising." Beach I, 959 F.2d at 987
 
 
 [4]
 Overinclusive classifications "may of course be challenged as denying equal protection." LAURENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW § 16-4, at 1450 (2d ed. 1988). However, as far as we are aware, neither the Supreme Court nor the D.C. Circuit has explicitly addressed the problem of "extension" versus "nullification" as a remedy for the violation of equal protection by an overinclusive statute. Justice Harlan mentioned the problem in his Welsh v. United States concurrence, which is the source of modern remedial doctrine concerning underinclusive statutes. In passing, Harlan suggested that "cases of alleged 'overinclusion' " do not "present[ ] the remedial problem that arises in '[an underinclusion] case.' " Welsh v. United States, 398 U.S. 333, 363 n. 15, 90 S.Ct. 1792, 1808 n. 15, 26 L.Ed.2d 308 (1970) (Harlan, J., concurring in the result)
 
 
 [5]
 Petitioners do not challenge any feature of the Cable Act except the franchise requirement in § 621(b)(1). We need not decide at this point whether other statutory requirements for "cable systems," including external, quasi-private SMATV facilities, are severable from this one. See, e.g., 47 U.S.C. § 559 (1988) (prohibiting transmission of obscene matter over any "cable system")
 
 
 [6]
 The FCC has advised:
 The Court should be aware that significant cable legislation is before Congress now, see, e.g., H.R. 4850, 102d Cong., 2d Sess. (1992), and that Congress in the context of considering that legislation will have an opportunity to revise the definitional provisions of the 1984 Act if it chooses. Some interested parties have brought the Court's decision in this case to the attention of the relevant committees and have suggested legislative language to address the equal protection question identified in the majority opinion in this case.
 Report of Respondent Federal Communications Commission in Response to Opinion of March 6, 1992, at 7.